**IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF OKLAHOMA**

(1) GREENFIELDS PARTNERS LLC, )
)
Plaintiff, )
)
vs. ) Case No.:
)
(1) MARCEL EDWARDS; )
(2) EMI CAPITAL; )
(3) TYRONE PHIPPS )
(4) RT CAPITAL INC.; and )
)
Defendants. )

## COMPLAINT

**COMES NOW**, the Plaintiff, Greenfields Partners LLC, and for its Complaint against the Defendants, Marcel Edwards; EMI Capital; Tyrone Phipps; RT Capital Inc.; and EMI Capital, hereby alleges and states the following:

## NATURE OF ACTION

This is an action against the above-named Defendants for damages resulting from breach of contract and detrimental reliance, and related claims arising from a financial joint venture between Plaintiff and Defendants and fraud in the inducement against Defendants related to the same. Plaintiff seeks inter alia, compensatory damages, punitive damages, reasonable attorney's fees and all other relief the Court deems just and proper.

## PARTIES

The Parties to this Complaint are:

1. Plaintiff, Greenfields Partners LLC ("**Greenfields**"), is a partnership formed in Oklahoma County, State of Oklahoma, and conducts business in Oklahoma County, State of Oklahoma.

2. Defendant, Marcel Edwards ("**Edwards**"), is a purported medical doctor who does business in New York, Kansas and Oklahoma. He is the President and Sole Director of EMI Capital.

3. Defendant, EMI Capital ("**EMI Capital**"), is a corporation incorporated pursuant to the laws of Quebec, Canada, with a registered address of 950 Rue Saint-Antoine E, Montreal, QB H2L 2P8.

4. Defendant, Tyrone Phipps ("**Phipps**"), is a Director and Shareholder of RT Capital Inc.

5. Defendant RT Capital Inc. ("**RT Capital**"), is a corporation incorporated under the laws of Alberta, Canada. RT Capital and Mr. Phipps do business in the United States, specifically in New York, Kansas, Oklahoma and Nevada. Defendant Phipps was suspended by the Ontario Securities Authority from 2013-2023.

## JURISDICTION

6. Jurisdiction in this matter is based on diversity of citizenship. The amount in controversy exceeds $75,000.00. The Plaintiff is an Oklahoma-based corporation and the Defendants all reside or are incorporated in Canada.

## VENUE

7. Venue is proper whereas the events giving rise to the claim occurred in the Western District of the State of Oklahoma.

## FACTUAL BACKGROUND

### The Defendants' Proposed Investment Opportunity

8. On or about April 11, 2022, Greenfields was contacted by Phipps as a representative of RT Capital regarding an opportunity to participate in a Standby Letter of Credit ("**SBLC**") program through a joint venture with his company, RT Capital.

9. The projected program was USD$500,000,000 with a return of USD$180,000,000. Phipps confirmed that each joint venture partner was projected to receive a return of USD$90,000,000, and that he was vetting Greenfields for a possible recommendation to enter the program (the "**Transaction**").

10. On or about May 5, 2022, Phipps confirmed that he had vetted the Transaction and that it required USD$180,000 (the "**Capital**") to enter, as opposed to a normal entry fee of $250,000. Phipps represented that the transaction dealt with a SBLC involving the following providers:

(a) HSBC Holdings plc;

(b) Barclays Bank US;

(c) Lloyds Bank plc;

(d) UBC Group AG; and

(e) Bank of America.

**<u>Phipps Introduces Edwards to Greenfields</u>**

11. While originally Phipps stated that he had connection to obtain the SBLC through an individual named "Dr. Mooney", he ultimately recommended a "second monetizer" named Dr. Marcel Edwards ("**Edwards**"). Monetization would be done by Edwards through his family office, EMI Capital.

12. Phipps indicated he had vetted Edwards and that he was a "trusted" and "battle-tested" monetizer who had always performed on his obligations. Greenfields had no other knowledge or information about Edwards or EMI Capital and relied on Phipps' advice and due diligence in this regard.

13. Greenfields was informed by Edwards that he had used the Messer Law Group, PLLC ("**Messer Law**"), of New York City as his escrow holder in the past. It was understood by the parties and encouraged by the Defendants that Messer Law would be used again for the Transaction, given Edwards' relationship with the firm.

14. Together, the Defendants made the following promises about the Transaction:

(a) Upon the escrow being funded, the SBLC of $250,000,000 would be issued in 2-3 days;

(b) Monetization would take 5-7 banking days;

(c) There would be a return of USD$180,000,000;

(d) The return would take approximately 20 banking days, following which the monetization would occur and the funds received by participants; and

(e) Edwards and EMI Capital were well-respected in the industry and this was a great opportunity to work with Edwards.

**<u>The Joint Venture Agreement</u>**

15. On or about May 9, 2022, Greenfields joined multiple phone calls with the Defendants, wherein they repeatedly confirmed:

(a) The safety of the Transaction;

(b) That the SBLC would be issued following funding by Greenfields;

(c) That monetization would occur and the fund received by participants within 20 banking days; and

(d) That no funds would leave Messer Law's client trust account unless a valid instrument was issued.

16. Based on the Defendants' representations and advice, Greenfields decided to move forward with the Transaction.

17. On or about May 9, 2022, Greenfields executed a Partnership/Joint Venture Agreement (the "**JVA**") and wired the Capital. At Edwards' insistence, the money was wired to Messer Law's Trust account. Confirmation of the wire was received.

18. In entering the JVA, Greenfields relied on the Defendants' reassurances and representations. These representations were either negligently made, or intentionally with the express intent of persuading and inducing Greenfields to enter into the Transaction.

19. The JVA provides that Greenfields would provide the Capital for the delivery of the SBLC. The Capital would be secured by escrow to Messer Law's trust account, and would only be released when the Transaction's designated financial institution received a document from the SBLC provider (the "**MT760**").

20. The JVA further contemplates that the monetization would occur within 20 banking days from the receipt of the USD 180,000 and 50% of the trade proceeds every 30 days for 10 months.

21. In exchange for the required Capital, RT Capital and Phipps agreed to represent Greenfield's interest in the transaction, acting as a fiduciary for the interest of Greenfields.

22. The JVA also provides that the initial payout for the transaction "[would] be distribute4d to [Greenfields]" and that it was projected to be USD 50,000,000, plus 50% of the trade proceeds.

23. Greenfields and RT Capital Inc. agreed that the parties would work together with EMI Capital towards a successful completion of the Transaction. The JVA contemplates that in the event the Transaction's designated financial institution does not receive the MT760 from the SBLC provided specific to the Transaction, RT Capital Inc. agrees to refund and return to Greenfields the Capital immediately upon the realization or determination that the Transaction cannot be implemented.

24. Specifically, the JVA outlines that the parties acknowledged that the Capital may only be used exclusively for participation in the Transaction and for no other purpose.

25. The JVA requires that in the event of a breach of the agreement, the other party may terminate the JVA. If the breaching party does not cure the breach within ten days of written notice, the breaching party will refund monies due to the other party.

**<u>The Defendants Misappropriate Greenfields' Funds</u>**

26. On or about May 25, 2022, Phipps, Edward and Greenfields had a phone call wherein Edwards relayed the following:

(a) The SBLC was expected by May 27, 2022;

(b) From that date, 24-48 hours was needed to complete all paperwork;

(c) Once the paperwork was complete, payout would occur in 3-5 banking days, with an expected timeline for payout of June 6, 2022 to June 7, 2022;

(d) After the payout, Edwards would confirm entry into a trading program and subsequent payout;

(e) The subsequent payout would be 80% of USD$250,000,000 or USD$200,000,000 with USD$100,000,000 being split between RT Capital and Greenfields and the other USD$100,000,000 being placed into a trade program; and

(f) That no funds would be transferred unless a valid instrument was issued.

27. After the expiry of the deadlines contemplated by Edwards on the May 25, 2022 call, Greenfields inquired as to why the payout and SBLC were not made available, as agreed.

28. The parties exchanged some correspondence, and reassurances were given, causing Greenfields to wait before taking any further action.

29. For example, regular phone call updates were requested and provided from June 9, 2022 to August 15, 2022. In those phone calls, Edwards and Phipps made repeated promises and reassurances that the Transaction had merely been delayed and that the promised funds would still be received by Greenfields.

30. On or about August 22, 2022, the parties had a conference call wherein the Defendants relayed that the Capital had been released from escrow by Messer Law, despite errors in the MT760 (no valid instrument). Edwards conveyed that he would cover and replace the converted funds, and that he had confirmed an agreed deadline of August 15, 2022 to resolve all issues and have a new MT760 issued.

31. On or about October 12, 2022, Phipps informed Greenfields that he had spoken with Edwards and that there would be no MT760 issued in the year. In exchange, Edwards committed to making a payment to Greenfields in the amount of USD$10,000,000 (the "**Commitment**"). Greenfields requested that Edwards make this commitment in writing. As of the date of filing, no such correspondence has been received.

32. On November 21, 2022, RT Capital and Phipps made the same Commitment.

33. On April 21, 2023, Greenfields delivered a demand letter to the Defendants for the return of the Capital. As of the date of filing, no funds have been received from any of the Defendants.

**<u>The Defendants Fail to Return Greenfields' Funds</u>**

34. To date, the Defendants have continued to make promises for the return of the Capital:

(a) On or around November 21, 2022, Phipps represented to Greenfields that Edwards was prepared to offer $10,000,000 to Greenfields considering he had not been able to complete the valid SBLC transaction;

(b) On June 21, 2023, Edwards emailed Greenfields and stated that the Capital would be returned within 5 business days and the Transaction terminated; and

(c) Since June 2023, various other promises and reassurances have been made by the Defendants, with Phipps recently executing an acknowledgment of the debt owed on or around November 2023. Attached as Exhibit "1".

35. These promises and reassurances have caused Greenfields to wait before taking any further action. The Plaintiff states that, at the time Phipps, Edwards, RT Capital and EMI Capital, independently or as part of the conspiracy with each other, continued to lead Greenfields to believe the JVA and/or Commitment would be honored, causing further financial harm to Greenfields.

36. Despite these additional assurances, the Defendants have become unresponsive and have failed to provide any meaningful explanation for the non-performance under the JVA and the Commitment. The Defendants have failed to meet numerous deadlines under the JVA. This non-performance has continued without explanation.

**Greenfields' Losses**

37. In reliance on the representations, contractual obligations and promises from RT Capital and Phipps, and the representations and promises from Edwards and EMI Capital, Greenfields wired the Capital to Messer Law (USD$180,000).

## COUNT I
## BREACH OF THE JVA

38. RT Capital and Phipps breached the JVA by failing to return the Capital and by misusing and misappropriating the Capital contributed by Greenfields for the sole purpose of the Transaction.

39. As a direct and proximate result of RT Capital and Phipps' breaches of contract, Greenfields has suffered damages in the amount of USD$180,000.

**COUNT II**
**MISAPPROPRIATION/CONVERSION**

40. Each of the Defendants have misappropriated and/or converted to their own use the Capital.

41. The Defendants misappropriated the Capital for their own personal use and failed to use the Capital for the agreed-upon Transaction. When given an opportunity to arrange the return of the Capital, the Defendants have failed or refused to do so without any basis in fact or law and despite their clear obligations under the JVA to do so. Instead, the Defendants arranged for the Capital to be used for their own personal use.

42. The Defendants have profited, either directly or indirectly, from their tortious conduct in converting the Capital and have, individually or collectively, realized a profit from the misappropriation and/or conversion of Greenfields' property.

43. Greenfields has suffered damages as a result of the Defendants' misappropriation and conversion in the amount of USD$180,000.

**COUNT III**
**NEGLIGENT AND/OR FRAUDULENT MISREPRESENTATION, CONSPIRACY AND FRAUD AND DECEIT**

44. On or about May 9, 2022, Greenfields wired the required Capital to Messer Law Trust account. Greenfields made all the required payments under the JVA.

45. RT Capital and Phipps completed none of the required services under the JVA. Edwards and EMI Capital followed through with none of their promises.

46. On or before entering into the JVA, the Defendants knew they could not complete the Transaction with Greenfields, but conducted themselves in such a manner as to mislead

Greenfields that they could, in order to fraudulently extract the Capital from Greenfields. This conduct was planned, intentional, in bad faith and malicious, and was carried out in order to steal and convert Greenfields' Capital with no intention of completing the Transaction.

47. Alternatively, RT Capital and Phipps knew, or should have reasonably known, and/or were wilfully blind to the fact that, they could not complete the Transaction contemplated under the JVA. They nonetheless proceeded and conducted themselves in breach of the contracts, their fiduciary duties and their duty of good faith in order to convert Greenfields' Capital.

48. In the further alternative, RT Capital and Phipps reasonably should have known that none of EMI Capital or Edwards had sufficient funds, to perform the expected monetization contemplated in the JVA. In breach of their representations and obligations to conduct satisfactory diligence, RT Capital and Phipps failed to carry out any inquiries or investigations of EMI Capital or Edwards. Instead, they provided baseless assurances to Greenfields, which they knew or reasonably ought to have known, would be relied upon by Greenfields and would induce Greenfields to enter into the JVA, to its detriment.

49. Each of the representations made by RT Capital and Phipps was false or misleading. RT Capital and Phipps had a duty to ensure the representations they made to Greenfields were accurate, knowing that Greenfields would rely upon those representations to continue supporting the JVA and Transaction.

50. Greenfields would not have entered into the Transaction or sent the Capital, but for the above-noted representations.

51. The monetizers, EMI Capital and Edwards, were fully aware of, wilfully blind to and/or participated in and actively concealed, the true reality of the Transaction: that RT Capital and Phipps could not, and/or had no intention to, complete the Transaction with Greenfields, and were instead fraudulently extracting the Capital from Greenfields without any intention of

completing the Transaction. Each of the Defendants, to an extent not fully known to the Plaintiff but known to the Defendants, conspired together to induce Greenfields into paying the Capital, with the intention of taking the Capital and providing no corresponding service.

52. Greenfields has suffered damages as a result of the Defendants' actions in the amount of USD$180,000.

**COUNT IV**
**BREACH OF THE DUTY OF HONEST CONTRACTUAL PERFORMANCE**

53. After the execution of the JVA, RT Capital and Phipps owed Greenfields a general duty of good faith and honesty in contractual performance.

54. RT Capital and Phipps failed to act honestly in the performance and carrying out of the terms of the JVA with the Plaintiff. RT Capital and Phipps breached their duty of good faith and honest contractual performance by:

(a) Lying to Greenfields or misleading it about their performance of the JVA, including about the use of the Capital contributed by Greenfields;

(b) Misappropriating and misusing the Capital for reasons other than what was agreed to between the parties;

(c) Instructing Messer Law to transfer money from the Capital to satisfy their own debts and obligations;

(d) Failing to terminate the JVA and return the Capital despite Greenfields' request for its return; and

(e) Generally failing to consider Greenfields' interests in their performance of the JVA.

55. Greenfields has suffered damages as a result of RT Capital and Phipps' breach of the implied duty of good faith in the amount of USD$180,000.

**COUNT V**
**UNJUST ENRICHMENT**

56. Each of the Defendants was unjustly enriched by the Capital, with no juristic reason. Greenfields suffered a corresponding deprivation of the Capital that has not been returned.

57. Greenfields seeks restitution and payment of USD$180,000 on the basis of the principles of unjust enrichment or *quantum meruit*.

58. As a result of the Defendants' malicious and dishonest acts, Greenfields also respectfully requests an award of punitive and aggravated damages against them. Their conduct was deceitful, conspiratorial, in clear violation of good faith and fiduciary obligation and basic civil decency, and accordingly warrants a strong rebuke from the Court.

**RELIEF**

WHEREFORE, Plaintiff, Greenfields Partners LLC, accordingly and respectfully prays the Court for judgment against the Defendants as follows:

1. That Plaintiff be awarded general compensatory damages in an amount in excess of $75,000.00;
2. That Plaintiff be awarded actual damages, which are in excess of $75,000.00;
3. That Plaintiff be awarded statutory damages in an amount in excess of 75,000.00;
4. That Plaintiff be awarded punitive damages in an amount to be determined at trial;
5. That Plaintiff be awarded its attorney's fees and costs in this action;
6. That Plaintiff be awarded any such other relief to which it may be entitled as a matter of law and deemed appropriate by this Court;
7. That Edwards lose his medical license; and

8. That all Defendants be barred from doing any financial transactions in the United States;

9. Stop all financial transactions and solicitations; and,

10. That the Court make a finding of fraud against all Defendants.

Respectfully submitted,

Jeffrey D. Black, OBA #13847
BONHAM & HOWARD
3555 N.W. 58th Street, Suite 1000
Oklahoma City, OK 73112
405-943-6650 / 405-943-6655 (fax)
jblack@bonhamandhoward.com

**ATTORNEY FOR PLAINTIFF**

**ATTORNEY'S LIEN CLAIMED**
**JURY TRIAL DEMANDED**